# HARDIN v. SHEDD.

### ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 56.　Argued January 12, 1903.—Decided May 18,* 1903.

When the United States conveys land bounded on a non-navigable lake it assumes the position, so far as such conveyances are concerned, of a private owner, subject to the general law of the State in which the land is situate.

Since *Hardin* v. *Jordan*, 140 U. S. 371, the law of Illinois has been settled that conveyances of the upland on such lakes do not carry adjoining lands below the water line.

When land is conveyed by the United States on a non-navigable lake the rules of law affecting the conveyance are different from those affecting a conveyance of land bounded on navigable waters.

The common law as understood by this court and the local law of Illinois with regard to grants bounded by navigable waters are the same.

THE case is stated in the opinion of the court.

*Mr. Thomas Dent* for plaintiffs in error.

I. The case involves a question of title under patents from the United States for public lands in Illinois.

One of such patents was to John Holbrook. It was dated May 20, 1841, and was based upon an entry by Mr. Holbrook at the land office in Chicago, December 24, 1838. The other patent was to William B. Egan, and dated August 1, 1853.

Three of the tracts described in the patent to Holbrook bordered on a lake. The patent to Egan was also for a tract that bordered on the lake. The two tracts of the defendant in error were also on the lake. All the tracts were fractional.

It was claimed in the pleadings by the plaintiffs in error that the tracts bordering on the lake extended to the center of the lake, such lake being non-navigable, and having belonged to the United States at the time of the survey and platting, and not having been reserved in or in any way excluded from the grant.

1. That the lake was non-navigable is an unquestioned fact in the case. It was so found in the decree to be reviewed. There was a like finding in the earlier decree, with which, in

---

* Petition for rehearing filed June 1, 1903.

this particular, the Supreme Court of Illinois agreed. *Fuller* v. *Shedd*, 161 Illinois, 462, 473.

2. The title to the lake or submerged lands therein was in the United States at the time of such survey and platting. Act of Virginia of October 20, 1783, and the deed of cession thereunder of March 1, 1784; 1 Kent's Com. *258, 259; *Johnson* v. *McIntosh*, 8 Wheat. 543, 586; *President &c. of Commons* v. *McClure*, 167 Illinois, 23, 35 ; *Rogers* v. *Jones*, 1 Wendell, *237, 256; *Roe* v. *Strong*, 107 N. Y. 350.

3. The grant to Virginia and from that State to the United States was, as to land and water alike, as broad as that to William Penn, which was construed in *Coovert* v. *O' Conner*, 8 Watts, 470, 477 ; *Trustees of Schools* v. *Schroll*, 120 Illinois, 509.

The doctrine which this court recognized in *Hardin* v. *Jordan*, 140 U. S. 371, was therefore applicable to the patents which were in the usual form.

4. In the nature of the case, the usual common law principles applicable to grants or conveyances, work the same result. 3 Kent's Com. *428; Elphinstone on Interpretation of Deeds, 182; *Middleton* v. *Pritchard*, 3 Scam. 510; *Beckman* v. *Kreamer*, 43 Illinois, 447; *Bristol* v. *County of Carroll*, 95 Illinois, 84; *Paine* v. *Woods*, 108 Massachusetts, 160–169 ; *Hogg* v. *Beerman*, 41 Ohio St. 81; and see *Niles* v. *Cedar Point Club*, 175 U. S. 300, 308, as to this class of waters non-navigable in fact, being "generally the property of riparian owners."

II. Upon the question whether the state court should have declared the title to the lake under consideration to be in the State, as was done by the decree under review, it is submitted :

1. Such finding ignored or disregarded the classification or division of waters. The distinction between public or navigable waters and those which are private or non-navigable is reasonable, and is well established. When the State of Illinois was admitted into the Union it entered the same "upon the same footing with the original States, in all respects;" and it is not denied that the State thereupon acquired, without any other specific grant from the United States, the dominion and sovereignty over and ownership of lands under its navigable waters, the ownership being in trust for the people. *Martin*

v. *Waddell*, 16 Peters, 410 ; *Pollard* v. *Hagan*, 3 How. 212; *I. C. R. R. Co.* v. *The People*, 146 U. S. 387; *Genesee Chief* v. *Fitzhugh*, 12 How. 443; *Barney* v. *Keokuk*, 94 U. S. 324.

But such cases as *St. Paul & Pacific R. R. Co.* v. *Shurmeier*, 7 Wall. 272, and *Packer* v. *Bird*, 137 U. S. 661, make note of the distinction observed in the acts of Congress between streams navigable and those not navigable.

The effectiveness of grants from the United States of lands on waters not navigable in fact was not intended to be thereby impaired, but it was considered that if any of the western States, like Illinois, for example, chose "to assign to the riparian proprietor rights which properly belong to them in their sovereign capacity, it is not for others to raise objections." Mr. Justice Field thus quoting in the latter case from *Barney* v. *Keokuk, supra.*

But it would require an express grant from the United States, to pass the title to a non-navigable body of water situated in the public domain in any part of the Northwest Territory, *Healy* v. *Joliet & Chicago R. R. Co.*, 116 U. S. 191; *Hubbard* v. *Bell*, 54 Illinois, 110 ; and when it was found, as a matter of fact, that the lake in this case was not navigable, no inference of a grant of the same from the United States otherwise than by the patents put in evidence, could be indulged. The fact of non-navigability was of itself evidence that the United States held the submerged lands, or the lake itself, while the bordering lands remained unsold.

2. What then was the ground upon which the Supreme Court of Illinois adjudged the ownership of this non-navigable lake to be in the State? It was upon a supposition that the law of boundary as applied to rivers is inapplicable to lakes ; and the question whether a lake should be held to be the property of the State was made to turn upon the question whether it was "meandered in the original survey," 161 Illinois, 489, which was in effect saying, that if in the original survey a lake was meandered, such lake became the property of the State. The meandered line is not evidence of a grant to the State.

The Supreme Court of Illinois attributed to the meander in the present instance an effect entirely different from its views

of a meander in all other cases involving waters within its borders, belonging, in the first instance, to the general government, and subject to sale according to the acts of Congress.

Among such other cases to be noticed as maintaining a rule different from the result maintained by that court in this case may noted: *Middleton* v. *Pritchard*, 3 Scam. 510; *Canal Trustees* v. *Haven*, 5 Gilm. 548; *City of Chicago* v. *Laflin*, 49 Illinois, 172; *Houck* v. *Yates*, 82 Illinois, 179; *Washington Ice Co.* v. *Shortall*, 101 Illinois, 46; *Fuller* v. *Dauphin*, 124 Illinois, 542.

It is true that the expressions of the court, in its first opinion in this case, 161 Illinois, 481, were not in the form of a disapproval of those cases, in their affirmance of the doctrine that a meander in surveying government land bounded by a stream or body of water is with reference to ascertaining the quantity of land in a fraction; yet the court attributed to the running of the meander a larger effect, in the present instance, because a lake and not a stream was the object under consideration, in the territory surveyed.

In the matter of title, an examination of the cases or authorities cited to sustain the proposition will show that they did not search for nor follow common law guidance in the matter. The real question, as this court held in *Hardin* v. *Jordan, supra,* " had regard to the ownership of the beds of inland lakes, not of such size as to be classed with the great navigable lakes and rivers of the country;" and it also held, as to the difficulty of determining titles, " We do not think that this argument *ab inconvenienti* is sufficient to justify an abandonment of the rules of the common law." And see also *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Lamprey* v. *The State*, 52 Minnesota, 181; *Kirkpatrick* v. *Yates*, 45 Missouri App. 335; *Grand Rapids Ice Co.* v. *S. Grand Rapids Ice Co.*, 102 Michigan, 227; *Olson* v. *Huntamer*, 6 So. Dak. 364; *Shell* v. *Matteson*, 81 Minnesota, 38; *Kanouse* v. *Slockbower*, 48 N. J. Eq. 42.

It should be further remarked that in observing the history of land titles in different States it will be borne in mind that in the older States on the Atlantic borders the primary source of titles was from the crown and then passed under the States

themselves. But as to the public lands in the Northwest Territory, or in any of the States therein, these belonged to the United States, and were under the power and control, not of the States, but of the Congress; and hence if legislation similar to the Massachusetts ordinances, having the effect of changing the common law as affecting titles or the construction of patents or conveyances, had been thought to be desirable, resort to Congress, to declare or provide for such changes, would have been necessary.

3. The influence of cases based on ordinances adopted as early as 1741 in Massachusetts will be recognized in the decision of the state Supreme Court. These ordinances became "the foundation of a local common law in Massachusetts, including Maine, which led to a course of decisions with regard to the title of lakes and ponds at variance with the common law, and which have been followed in New Hampshire and some other States." *Hardin* v. *Jordan, supra,* and see *Shively* v. *Bowlby,* 152 U. S. 1.

4. If the policy favored by the state court had been in the public mind when the government had the public domain, or any great part of it, in the Northwest Territory, why was not Congress memorialized to enact laws to withdraw lakes of a certain size, or meandered lakes, from sale, as being reserved for the benefit of the States respectively, or the people thereof?

5. The government, while it was proprietor, was, of course, at full liberty to have a resurvey made, with reference to replatting, if the original survey was made at an unfavorable time, on account of the stage of water being too great, or if a subsidence from any cause left too much dry land to go with the fractions originally platted; and the books undoubtedly show a number of instances of this having been done. One such instance is shown by *Bristol* v. *County of Carroll,* 95 Illinois, 84.

This is but equivalent to saying that the lake did not lose its non-navigable character, and did not pass from the proprietorship or control of the United States, by anything that was done by the surveyor or the surveyor general in surveying and platting the fractional township embracing a great part of

the lake; and such again is the effect of *Iowa* v. *Rood*, 187 U. S. 87.

III. The plenary power of Congress over the public lands, of which this fractional township was a part, is too clear to be questioned. Constitution, Art. IV, § 3, par. 2; *Wilcox* v. *Jackson*, 13 Pet. 498; *Bagnell* v. *Broderick*, 13 Pet. 436; *Irvine* v. *Marshall*, 20 How. 558; *Gibson* v. *Chouteau*, 13 Wall. 92.

1. Under the Ordinance of 1787, art. 4, the legislatures in the new States which it was expected would be formed out of the Northwest Territory were never to " interfere with the primary disposal of the soil by the United States in Congress assembled, nor with any regulations Congress may (might) find necessary for securing the title in such soil to the *bona fide* purchasers." Nor could the state courts so interfere, and stamp any part of the public domain as state property, or property not subject to be conveyed by the government.

The question as to the effect of the surveying, platting and sale by the United States, including the construction of the patents is to be resolved by the laws of the United States, and the decisions of this court in regard thereto should be held to be binding on the state courts. *Gilmore* v. *Sapp*, 100 Illinois, 297; *Seymour* v. *Landers*, 3 Dillon, 440; *Paige* v. *Peters*, 70 Wisconsin, 178.

The state court should therefore have followed the decision of this court in *Hardin* v. *Jordan*, and *Mitchell* v. *Smale*, and not have disregarded the same.

As the common law prevailed in Virginia when the territory was ceded, the grants from the United States followed it, and it was not within the power even of the legislature of a State to change it in respect to the rights of patentees of lands bordering on non-navigable lakes. *Shell* v. *Matteson, supra*.

Upon the question what the common law was this court had a full right to speak, authoritatively too, especially in regard to the public lands, under patents therefor. *Yates* v. *Milwaukee*, 10 Wall. 497; *Nelson* v. *City of Madison*, 3 Biss. 244.

The fact that this court has revisory power over the judgment of the state court, because of the right claimed under the Constitution and laws of the United States but denied by the

state court, leads to the conclusion, also, that the state court should have followed the decisions of this court in the special matter involved. *Green* v. *Lessee of Neal,* 6 Pet. 291, 298; *Dower* v. *Richards,* 151 U. S. 659; *Republican River Bridge Co.* v. *Kansas Pac. Ry. Co.,* 92 U. S. 315, 317.

The first decree in the state court, having been reversed, has no binding force or effect, and when the second decree is found to have been based upon error of law, as to the effect of the meander and the rights of the State, there is manifest and eminent propriety in the exercise of the power in this court to give the same effect to the writ of error as if the judgment or decree complained of had been rendered or passed in a court of the United States.

2. What, then, should be the judgment? It should correct the fundamental error, to wit: The declaration of title in the State, and the limiting of the title of the plaintiffs in error to the water's edge, as if the supposed meander line governed, taking the water's edge as of a fancied "ordinary stage." It should follow the decisions of this court in *Hardin* v. *Jordan* and *Mitchell* v. *Smale.* The plat should govern, as no error therein is shown.

IV. As to the apportionment of the lake bed:

1. The decisions in *Hardin* v. *Jordan* and *Mitchell* v. *Smale* should have prevailed, and should be applied in this case. The findings in the state court do not bind; for those made by the final decree were upon an erroneous view of the law. There being error in the fundamental proposition of the state court, the right of this court is not restricted or limited by the judgment of the state court, but the whole of such judgment is subject to be reversed. The case is resolved into a question of law —What title had the plaintiffs in error in respect to the lake, or lands originally submerged?—and upon that question the whole record is open for revision by this court. *Lytle* v. *Arkansas,* 22 Howard, 193; *Dower* v. *Richards,* 151 U. S. 659; *Republican River Bridge Co.* v. *Kansas Pacific Railway Co.,* 92 U. S. 315, 317. This is a case involving title and not merely boundaries in the ordinary sense as was *Moreland* v. *Page,* 20 How. 523, cited by appellees.

The question is whether the state court could rightfully declare the title to the lake to be in the State, and make the boundary of the government grant the water's edge, and therefore changeable, and subject to the winds, the seasons and the march of public improvement. The question is whether from supposed state policy the court should withdraw from the operation of the grant any land remaining submerged, continuing the withdrawal, it may be, as long as an inch of water covers the rather level surface of the lake bed. The plat and the field notes should be considered, along with the patents, in the matter of legal construction. Such plat and field notes are to be presumed to be correct until the contrary is shown. *O'Gilvie* v. *Copeland,* 145 Illinois, 98; *Town of Kane* v. *Farrelly,* 192 Illinois, 521. No objection thereto in the present case remains.

What there was of the lake as platted is therefore subject to be apportioned. *Forsyth* v. *Smale,* 7 Biss. 201; *Webber* v. *Pere Marquette Boom Co.,* 62 Michigan, 626; *Houck* v. *Yates, supra; Middleton* v. *Pritchard, supra; Grand Rapids &c. R. R. Co.* v. *Butler,* 159 U. S. 85; Schultes on Aquatic Rights, 138; Tyler on Boundaries, 94.

Each fractional subdivision situated on the lake should be allowed its proper extension, as of the time when it was made ready for sale by the United States. *Jones* v. *Lee,* 77 Michigan, 35, 42. The extension would be laterally, or by the side, having regard to the water frontage. *Moore* v. *The Willamette Transportation Co.,* 7 Oregon, 355; Webster's Dictionary, definition of "laterally."

The side lines should run from the established corners.

The line between sections 29 and 30 was by the surveyor run to the lake. The notes say the remainder of the line was or would be in the lake.

The question of title is not controlled by what is sometimes called "state law." It is one of general law, applicable to patents for lands in the territory which was known as the Northwestern Territory, or it is a common law question when applied to titles emanating from the United States, and as to such titles free from state legislation, and of course exempt from domination by the state courts.

Those courts have in the main expressed views in harmony with those announced by this court in *Hardin* v. *Jordan*, and *Mitchell* v. *Smale, supra,* as to what is the common law on the subject. It is not reasonable to apply to non-navigable waters of this class the general rules to accretions. They properly pertain only to navigable waters which are more permanent.

V. As to the question of jurisdiction:

Such jurisdiction is given by U. S. Rev. Stat. § 709.

The judgment of the Supreme Court of Illinois first given was one of reversal in part, but with a remand to the Circuit Court of Cook County for further proceedings, and without specific directions, and hence was not reviewable here. *McComb* v. *Co. Com. of Knox Co.,* 91 U. S. 1.

Until the later and final decision by the Supreme Court of the State was made, the case could not be brought here for review. *Fisher* v. *Perkins,* 122 U. S. 522; *Davis* v. *Crouch,* 94 U. S. 514.

The claim of title by the plaintiffs in error was presented on the record in a variety of forms from first to last, by the pleadings and otherwise, and at each hearing in the Supreme Court of the State.

The certificate of the Chief Justice of that court that the Federal question arose in the state court is evidence of that fact, corroborative of the record itself. *Armstrong* v. *Treas. of Athens Co.,* 16 Pet. 281, 286.

The pleadings show that the question arose, and this fact may be observed. *Medberry* v. *Ohio,* 24 How. 413; *Buel* v. *Van Ness,* 8 Wheat. 313, 324.

*Mr. Harry S. Mecartney* for defendant in error.

I. No Federal question was specially raised in the state courts. *Spies* v. *Illinois,* 121 U. S. 131; *Maxwell* v. *Newbold,* 18 How. 511; *Hoyt* v. *Thompson,* 1 Black, 521; *Columbia W. P. Co.* v. *Columbia Elec. Str. Ry. Co.,* 172 U. S. 476; *Chappell* v. *Bradshaw,* 128 U. S. 132; *Zadig* v. *Baldwin,* 166 U. S. 485; *Kipley* v. *Illinois,* 170 U. S. 182; *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 649; *Telluride Power &c. Co.* v. *Rio Grande &c. R. R. Co.,* 175 U. S. 642; *Chapin* v. *Fye,* 179 U. S. 127.

The certificate of the Chief Justice of the Illinois Supreme Court does not give this court jurisdiction. *Powell* v. *Supervisors*, 150 U. S. 433.

II. The decision of the Illinois Supreme Court complained of involved a question of local law purely, upon which its judgment was final. The pivotal question in this case is that the local law of the State in which lands patented by the United States lie governs the construction to be given to grants of lands bordering upon waters, whether navigable lake, navigable stream, or non-navigable lake or stream. *Hardin* v. *Jordan*, 140 U. S. 371, and see cases cited in dissenting opinion; *St. Louis* v. *Rutz*, 138 U. S. 226; *Barney* v. *Keokuk*, 94 U. S. 324; *St. Louis* v. *Myers*, 113 U. S. 566; *Packer* v. *Bird*, 137 U. S. 661. See also *Shively* v. *Bowlby*, 152 U. S. 1; *St. Anthony Falls Water Power Co.* v. *Board of Water Commissioners*, 168 U. S. 349.

It was decided in *Hardin* v. *Jordan* that the shore owners took to the center of the lake, and this decision was based upon the theory that it was in accordance with decision of the Illinois Supreme Court. Since then the Supreme Court of Illinois has decided that shore owners do not take to the center but only to the water's edge. *Hammond* v. *Shepard*, 186 Illinois, 235. This court, however, is not bound to follow the latest decisions under such circumstances. *Yates* v. *Milwaukee*, 10 Wallace, 497; *Pease* v. *Peck*, 18 Howard, 595; *Town of Roberts* v. *Bolles*, 101 U. S. 119; *Morgan* v. *Cortenius*, 20 Howard, 1; *Gibson* v. *Lyon*, 115 U. S. 439; *Central Land Co.* v. *Laidley*, 159 U. S. 103; *Wade* v. *Travis Co.*, 174 U. S. 499; *Green* v. *Neal's Lessee*, 6 Peters, 291.

III. This court will not inquire into the alleged errors of practice. Even if a Federal question were involved it would examine such question alone. *Ashley* v. *Ryan*, 153 U. S. 436; *Mallett* v. *North Carolina*, 181 U. S. 589; *Cleveland &c. Co.* v. *Backus*, 154 U. S. 439; *Central Pac. &c. Co.* v. *California*, 162 U. S. 91.

IV. No such errors of practice, however, were in fact committed.

V. The character of Wolf Lake and the State's title to the

bed thereof, and its jurisdiction thereover are all within the scope of local law and are by the state court's decision foreclosed from inquiry here.

VI. The apportionment of accretions under the decree is accurate and just.   For definition of accretion and right thereto, see 1 Am. & Eng. Ency. 2d ed. 462, 474; *Municipality No. 2* v. *New Orleans Cotton Press*, 9 Louisiana, 437; *Kehr* v. *Snyder*, 114 Illinois, 313; *Benson* v. *Morrow*, 61 Missouri, 345; *Cooly* v. *Golden*, 117 Missouri, 33; *Buse* v. *Russell*, 86 Missouri, 209; *Bigelow* v. *Hoover*, 85 Iowa, 161; *Naylor* v. *Cox*, 114 Missouri, 232.

Mr. Justice Holmes delivered the opinion of the court.

This is a proceeding under the Burnt Records Act of the State of Illinois, by which the defendant in error, Shedd, seeks to establish his record title to certain land adjoining and under a non-navigable lake called Wolf Lake, lying partly in Illinois and partly in Indiana.   The plaintiff in error, Hardin, also owns land adjoining the same lake, by succession to a title under patents from the United States, and under these patents makes claims to land now or originally under the lake, which conflict with the claim of Shedd and with the decree of the court.  The other plaintiff in error is a grantee of Hardin.   The decree having been affirmed by the Supreme Court of the State, 177 Illinois, 123; *S. C.*, 161 Illinois, 462, the case is brought here by writ of error.   *Mitchell* v. *Smale*, 140 U. S. 406, 410; *Shively* v. *Bowlby*, 152 U. S. 1, 9, 10.   It seems unnecessary to go into details of the difference, as the main question here goes to the foundation of Hardin's case, and we are against her on that. Her title and a plan of the territory in which lies the disputed land will be found set out in *Hardin* v. *Jordan*, 140 U. S. 371.

The claim of the plaintiffs in error to the land below the original water line depends on its having passed by the patent of the United States.   The patent to Holbrook, from which they derive an important part of their title, was dated May 20, 1841, long before the Swamp Land Act.   At that time the land under the lake, as well as that surrounding it, belonged to the United

States, and if grants of the United States should be construed without regard to state laws, it may be assumed that, subject to all questions of the proper adjustment of lines, Hardin would have prevailed. When land is conveyed by the United States bounded on a non-navigable lake belonging to it, the grounds for the decision must be quite different from the considerations affecting a conveyance of land bounded on navigable water. In the latter case the land under the water does not belong to the United States, but has passed to the State by its admission to the Union. Nevertheless it has become established almost without argument that in the former case as in the latter the effect of the grant on the title to adjoining submerged land will be determined by the law of the State where the land lies. In the case of land bounded on a non-navigable lake the United States assumes the position of a private owner subject to the general law of the State, so far as its conveyances are concerned. *Hardin* v. *Jordan*, 140 U. S. 371; *Shively* v. *Bowlby*, 152 U. S. 1, 45; *Grand Rapids & Indiana R. R. Co.* v. *Butler*, 159 U. S. 87, 90, 93; *St. Anthony Falls Water Power Co.* v. *St. Paul Water Commissioners*, 168 U. S. 349, 363. (Such cases are not affected by Rev. Stat. §§ 2476, 5251.) When land under navigable water passes to the riparian proprietor, along with the grant of the shore by the United States, it does not pass by force of the grant alone, because the United States does not own it, but it passes by force of the declaration of the State which does own it that it is attached to the shore. The rule as to conveyances bounded on non-navigable lakes does not mean that the land under such water also passed to the State on its admission or otherwise, apart from the Swamp Land Act, but is simply a convenient, possibly the most convenient, way of determining the effect of a grant. We are particular in calling attention to this difference, because we fear that there has been some misapprehension with regard to the point.

The law of Illinois has been settled since *Hardin* v. *Jordan*, 140 U. S. 371, and it now is clear, by the decision in this case and later, that conveyances of the upland do not carry adjoining land below the water line. *Fuller* v. *Shedd*, 161 Illinois, 462; *Hardin* v. *Shedd*, 177 Illinois, 123; *Hammond* v. *Shepard*,

186 Illinois, 235. Following these decisions, we must hold that the title set up by the plaintiffs in error fails. Even accepting the principles of the common law, it may be a question whether one consideration in this case was not overlooked in *Hardin* v. *Jordan*. It was noted that the conveyance was by reference to the official plat. The plat of the Illinois portion, unlike that of the part in Indiana, describes the lake as a " navigable lake." It is true that this was a mistake, but it might be urged that the description must be taken to have the same effect as if it were true when we are determining the effect of a conveyance adopting it. It would seem that if a conveyance of land bounded by navigable water would not pass land below the water line, a conveyance purporting to bound the land by navigable water does not purport to pass land below the water line. The common law as understood by this court and the local law of Illinois with regard to grants bounded by navigable water are the same. *Shively* v. *Bowlby*, 152 U. S. 1, 43, 47, 51; *Seaman* v. *Smith*, 24 Illinois, 521.

Of course, it would result from the Illinois ruling that the survey of the submerged land in 1874, referred to in *Hardin* v. *Jordan*, and the conveyances in pursuance of it, may have been good on the Illinois side of the state line, unless the State had got a title before that date under the Swamp Land Act. Whether it did so or not, it is unnecessary to consider in this case.

The land which Shedd gets under the decree of the state court he gets, not in derogation of the foregoing principles, but on findings of fact as to what land was above water at the date of the patents from the United States, 161 Illinois, 469, 470, and as to accretions to that land by the gradual drying up of the water at a later date. 161 Illinois, 473, 494. We perceive no need for considering the decree in detail.

*Decree affirmed.*

MR. JUSTICE WHITE, with whom concurs MR. JUSTICE MC-KENNA, dissenting.

This case, in some aspects, involves contentions supposed to have been finally decided by this court in *Hardin* v. *Jordan*,

140 U. S. 371, and *Mitchell* v. *Smale*, 140 U. S. 406. In those cases there was a controversy between persons holding the patents of the United States to fractional lots abutting on the meander line of Wolf Lake in Illinois and those holding the patents of the United States subsequently issued to the bed of the lake. The latter patents were based upon a survey made of the bed, approved after contest in the Land Department. It was held in the cases referred to that the rights of the claimants to the bed of the lake were to be determined by the local law of Illinois. Ascertaining what the local law was, it was decided that the abutting lot owners took to the center of the lake, and hence the subsequent patents to the bed were void.

The controversy presented by this record originated from conflicting claims made in two suits (subsequently consolidated) to the bed of Wolf Lake, between Mrs. Hardin (who was the plaintiff in *Hardin* v. *Jordan*) and one of her grantees, as owners of the border lots, Shedd, (grantee of Mitchell, the plaintiff in *Mitchell* v. *Smale*,) also as an owner of border lots, and various claimants under patents of the United States based upon the survey of the bed of the lake. Although the judgment below was against the second patentees, they have not prosecuted error. The Supreme Court of Illinois declined to apply the rule laid down by this court because it held that this court had in *Hardin* v. *Jordan* and *Mitchell* v. *Smale* misconceived the state law. By the local law it was held that the lot owners by the conveyance to them of lots abutting on the meander line took no title whatever to the bed of the lake. It was, however, decided that the effect of the conveyance by the United States to private persons of the border lots was to transfer the title of the bed of the lake to the State of Illinois. The doctrine of the Supreme Court of Illinois on the subject is not only shown in the opinion of that court in this case, *Fuller* v. *Shedd*, 161 Illinois, 462, but also in the subsequent case of *Hammond* v. *Shepard*, 186 Illinois, 235. In the first case, *Fuller* v. *Shedd*, after expressly deciding that the State of Illinois did not acquire title to the bed of the lake under the swamp land act, the court declined to hold " that the grant to the riparian owner conveys the bed of non-navigable (meander) lake, and make its waters mere private waters;"

and, further, said that, " so long as such meander lakes exist, over their waters, and bed when covered with water, the State exercises control, and holds the same in trust for all the people, who alike have benefit thereof, in fishing, boating, and the like." In the second case, *Hammond* v. *Shepard,* the Supreme Court of Illinois said (p. 241) :

"The law of this State, as repeatedly announced, is that shore owners on meandered lakes, whether navigable or non-navigable, take title only to the water's edge, the bed of the lake being in the State.

* * * * * * * *

"No shore owner can take away from the State its title to the former bed of the lake unless he can establish by proof that the dry land was formed by the water receding from his shore line."

Under the doctrine thus stated, having treated the bed of the lake as the property of the State, the court determined the rights of the parties by reference to principles of accretion which it deemed applicable to the property in the bed of the lake owned by the State. Now, in *Kean* v. *Calumet Canal & Improvement Company, ante,* p. 452, quite recently decided by this court, the doctrine announced in *Hardin* v. *Jordan* was re-examined, and it was in effect held that that case, whilst recognizing that the ownership of the beds of non-navigable lakes on the public domain was in the United States, simply decided that when the United States sold lots bordering on such a lake the question whether or not the bed of the lake passed by the grant of the border lots was to be determined by the principles of conveyancing in force under the local law of the State where the lake was situated. Now, as the settled rule in Illinois is that under the principles of conveyancing prevailing in that State no title to the bed of a lake passes to the patentees of the United States by the sale of border lots, I do not perceive how the United States has been divested of its title to the bed of Wolf Lake. To say that, although on the principles of conveyancing under the local law, the bed did not pass, nevertheless, because the United States sold the border lots, the State of Illinois thereby became the owner of the bed of the lake, is,

as I understand it, to declare that it is in the power of the State of Illinois to appropriate the property of the United States.

The suggestion that the considerations just stated are immaterial, because, even although by the local law, the United States did not convey to the patentees of the border lots title to the bed of the lake, it may have parted with its title to the bed by the swamp lands act, involves a departure from the settled construction of the swamp lands act to which attention was called in the dissent in *Kean* v. *Calumet Canal & Improvement Company, ante,* p. 452. Besides the disturbance of vested rights to which it seems to me such a suggestion must give rise, it must be remembered that it is directly in conflict with the opinion of the Supreme Court of Illinois in this very case, where it was expressly declared that the State did not take title to the bed of Wolf Lake under the swamp lands act, because as a matter of fact the converse had been explicitly decided by the Secretary of the Interior in a contest before the Land Department to which the State of Illinois was a party. The result of the suggestion as to the swamp lands act then, as I see it, is to cause the State of Illinois to become the owner of the bed of the lake under the swamp lands act, in derogation of the act of Congress, contrary to the rulings of this court and of the Supreme Court of the State, and in disregard of the express findings of fact made by the Secretary of the Interior when he approved the second survey, and also when he rendered the decision on the contest to which the State of Illinois was a party.

I fail to perceive if, as a matter of conveyancing under the local law, the title to the bed of the lake did not pass with the sale of the border lots, how the United States has lost its title. If it be conceded that the view of the local law, announced by this court in *Hardin* v. *Jordan,* was a mistaken one, and that the local law must be taken to be what the lower court held it to be in this case, then it seems to me the only foundation upon which the title of the United States to the bed of the lake can be disputed has disappeared, since in my opinion the theory of accretion which the court below applied cannot be

sustained either by reason or authority. I content myself with merely stating this view, which involves the merits, and do not elaborate, because, in my opinion, if it be—as the court now decides—that the question whether the title of the United States to the bed of Wolf Lake passed to the State of Illinois is to be determined solely by the local law of Illinois, as construed by the courts of that State, I do not perceive how a Federal question arises on this record, since I find it impossible to think that there can be a Federal question depending exclusively for its solution upon non-Federal or state law.

I am authorized to say that Mr. JUSTICE McKENNA concurs in this dissent.