484

## No. 17,551.

CLAUDE D. STEWART, ET AL. *v.* KEITHLEY P. LAMM, ET AL.

(289 P. [2d] 916)

Decided November 14, 1955.   Rehearing denied December 5, 1955.

Mr. DAVID J. McKEE for plaintiffs in error.

Messrs. APPLE & WEST for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

IN the trial court plaintiffs in error were plaintiffs and defendants in error were defendants. We will so refer to them, or by name.

Plaintiffs by their complaint sought a judgment and decree that the title to the minerals underlying a half section of land in Weld County, Colorado, was held by defendants in trust for plaintiffs; demanded that defendants be required to execute a proper conveyance of said mineral rights to plaintiffs, and upon their refusal to do so a commissioner be appointed to execute such conveyance. Plaintiffs' complaint was dismissed on motion of defendants as not stating a claim. Plaintiffs bring the cause here on writ of error. The sole question presented is whether the plaintiffs' complaint states a claim entitling them to the relief demanded.

The complete chain of title to this land is set forth in the complaint and discloses that the property in ques-

tion was originally certified by the Secretary of the Interior to be part of the land to be granted to the predecessor of the Union Pacific Railroad. Subsequent to such certification, but before patent, the railroad conveyed the land without making any reservation of minerals, so that by mesne conveyances J. R. Stewart, the ancestor of the plaintiffs in this action held whatever title to said land was conveyed by the railroad. Stewart made conveyance of the land in September, 1924, in which he reserved unto himself the minerals. In 1929 Albert C. Groshong and Bessie H. Groshong acquired whatever title Stewart formerly had.

In 1931 the Secretary of the Interior made a finding that said land, together with other lands originally certified to the railroad were "excess lands" and the same were restored to the public domain. In 1932 Congress passed Public Law No. 135 (47 Stat. at Large 156, chap. 186) which made provision that those who held color of title to such land so restored to the public domain could within a period of six years obtain patent thereto. Mr. and Mrs. Groshong made application for patent under said Act of Congress and patent was issued without reference to, or reservation of any minerals. Title then passed by mesne conveyances from Mr. and Mrs. Groshong to the defendants Lamm, who by an "exchange deed" conveyed the surface rights to the United States of America, reserving unto themselves the minerals. The Lamms in 1951 executed an oil and gas lease to defendant Lario Oil and Gas Company; defendant Fisher allegedly had some interest in this lease but he filed a disclaimer in the action.

Counsel for plaintiffs state in their brief: "It is the contention of the plaintiffs herein that the defendants Lamm acquired title to this real estate, including the minerals, charged with knowledge of and subject to the rights of J. R. Stewart and his successors, and that the said defendants hold title to the minerals, in trust, for and on behalf of plaintiffs herein."

Counsel for plaintiffs further state in their brief that the U.S. Patent "was issued without reference to the prior mineral reservation contained in the deed from J. R. Stewart and the legal and equitable title to the surface and the legal title to the minerals was thereby vested" in Mr. and Mrs. Groshong.

It is contended by counsel for plaintiffs that when J. R. Stewart reserved unto himself the mineral rights he thereby severed the mineral rights from the surface, and that thereafter independent interests in said real estate existed.

The patent from the United States to the defendants' predecessors in title conveyed the absolute fee title to both the surface and mineral rights.

It is obvious that prior to the issuance of the patent no one held title to this land, because it was public domain. What the Union Pacific Railroad had was a certificate that this land would or might be conveyed to the railroad in consideration of the construction of a railroad. Until the railroad complied with the conditions imposed, it had no title. When the proper Federal authorities determined that the land was "excess land," it was restored to the public domain, and under the Act of Congress any person holding "color of title" could apply for a patent within six years, otherwise the land would be subject to location and patent under other applicable land laws. No such application was ever made either by J. R. Stewart or anyone claiming under him. Hence, any right he might have asserted was lost by lapse of time.

What was the effect of the restoration of the land to the public domain? We think it is plain that by such restoration the right of the government was absolute not only to the surface but to all minerals underlying said land.

"The railroad company cannot dispose of the lands granted to it, except as to sections completed and accepted, so as to deprive the United States of the right to

compel their application to the purposes of the grant, or prevent their forfeiture for breach of condition." 42 Am. Jur. 835, Section 56.

Neither by the order under which these lands were restored to the public domain, or the 1932 Act of Congress, were rights of bona fide purchasers from the railroad in forfeited lands preserved, other than that those having color of title could apply for patent within the six year period, as above recited. Unless such rights are preserved by statute, upon restoration of the lands to the public domain, the title of the United States is absolute.

Plaintiffs having admitted that defendants hold legal title to the property in question, and not having alleged any fraud or irregularity in the proceedings which culminated in the issuance of the patent, we must conclude that the complaint did not state facts sufficient to constitute a claim against defendants. The U.S. Patent was issued in November, 1935, and as no irregularity or fraud in connection with the issuance of the patent has been pleaded, we are unable to find from this record any title derived by plaintiffs from the United States where all right and title was vested at the time the patent was issued.

Counsel for plaintiffs contend that the Colorado recording statutes protect their claim to the minerals. These statutes did not affect the absolute title of the United States when the lands were restored to the public domain. The instant suit was commenced April 17, 1954, and attempts to perfect a right initiated, as claimed by plaintiffs, in the year 1924. During the intervening period no claim was asserted to these mineral rights, and it is not disputed that plaintiffs and their predecessors in title had years of constructive notice of the issuance of the patent, if not actual notice of that fact. The proceedings incident to the issuance of the patent being in all respects regular, and plaintiffs' predecessors in title not having filed any adverse claim or asserted any title

to the minerals, we must hold that the patent conveyed to defendants' predecessors in title not only the surface rights, but the mineral rights as well.

It is well settled law that when a government grant is made which does not reserve a right or interest that would ordinarily pass by the rules of law, and the government does no act which indicates an intention to make such reservation, the grant includes all that would pass by it, as if it were a private grant. *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499; *Middleton v. Pritchard,* 3 Scram. 510 (Ill.); *Hardin v. Jordan,* 140 U.S. 371.

The judgment of the trial court must be and it is affirmed.