## WHITAKER v. McBRIDE.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 135. Submitted January 18, 1905.—Decided April 10, 1905.

The question of the title of a riparian owner is one of local law, and un-. restricted grants of the Government, bounded on streams and other waters, are to be construed according to the law of the State in which the lands lie. *Hardin* v. *Jordan*, 140 U. S. 371.

Government surveys of public lands are not open to collateral attack in an action at law between private parties.

A meander line is not a line of boundary but a means of ascertaining the quantity of land in the fraction which is to be paid for by the purchaser. Where the Government has surveyed and patented the lands up to the bank of a channel in which an unsurveyed island is situated, a patentee of the land on such bank, although his land may itself be an island surrounded by two channels of the river, has all the rights of a riparian owner in the channel lying opposite his banks, including the unsurveyed island if, as a riparian owner, he is entitled thereto by the laws of the State.

By the law of Nebraska, as interpreted by its highest court, riparian proprietors own the bed of a stream to the center of the channel. The Government as original proprietor has the right to survey and sell any lands, including islands in a river or any other body of water, and if it omits to survey an island in a stream and refuses to do so when its attention is called to the matter, no citizen can overrule the Department, and assuming that the island should be surveyed, occupy it for homestead or preemption entry. In such a case the rights of riparian owners are to be preferred to those of the settler.

THIS was an action commenced on June 27, 1898, in the District Court of Buffalo County, Nebraska, and terminated by a decision of the Supreme Court of the State. 65 Nebraska, 137. The facts found by the District Court are that McBride and Killgore were respectively the owners and in possession of tracts of land bordering on the Platte River, one on the north and the other on the south side thereof. Between these two tracts and in the main channel of the Platte River is an island, containing about twenty-two acres. This island had

been in the possession of McBride and Killgore for more than ten years prior to the bringing of the action, but during that time they were contending as to how much of the land each was entitled to. It had never been surveyed by the Government.

It appeared in evidence that Whitaker, in 1897, settled on the island, claiming the right to enter the same as a homestead; that application to the Land Department of the Government to have the island surveyed was in 1897 refused, the Department declining to take any action in the matter. These lands were a part of the Fort Kearney Military Reservation, which was surveyed and sold under a special act of Congress, dated July 21, 1876, 19 Stat. 94; the patent to McBride, who had entered his tract as a homestead, bearing date March 28, 1885. There was testimony tending to show that the island was at the time of the survey of the reservation frequently covered with water, and that since then—perhaps owing to the construction of bridges and dykes—overflows had been less frequent and the land better adapted to occupation and cultivation. The decree directed by the Supreme Court was adverse to Whitaker, and quieted the title of McBride and Killgore to the island, giving to each one-half.

*Mr. E. E. Brown,* and *Mr. Francis G. Hamer* for plaintiff in error.

*Mr. H. M. Sinclair, Mr. E. C. Calkins* and *Mr. M. P. Kinkaid* for defendants in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The decision of the Supreme Court of the State was that the owner of lands bordering on a river owns to the center of the channel, and takes title to any small bodies of land on his side of the channel that have not been surveyed or sold by the Government. It is the settled rule that the question of the

title of a riparian owner is one of local law. In *Hardin* v. *Jordan*, 140 U. S. 371, the matter was discussed at some length, the authorities cited, and the conclusion thus stated by Mr. Justice Bradley, delivering the opinion of the court (p. 384):

"In our judgment the grants of the Government for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the State in which the lands lie."

See also *Shively* v. *Bowlby*, 152 U. S. 1, 45; *Lowndes* v. *Huntington*, 153 U. S. 1, 19; *Grand Rapids &c. Railroad Company* v. *Butler*, 159 U. S. 87, 92; *St. Anthony Falls Power Company* v. *Water Commissioners*, 168 U. S. 349; *Kean* v. *Calumet Canal Co.*, 190 U. S. 452; *Hardin* v. *Shedd*, 190 U. S. 508.

If there were no island in this case it would not, under these authorities, be questioned that the title of the riparian owners extended to the center of the channel. How far does the fact that there is this unsurveyed island in the river abridge the scope of the rule? In seeking an answer to this question these facts must be borne in mind: The official surveys made by the Government are not open to collateral attack in an action at law between private parties. *Stoneroad* v. *Stoneroad*, 158 U. S. 240; *Russell* v. *Maxwell Land Grant Company*, 158 U. S. 253; *Horne* v. *Smith*, 159 U. S. 40. A meander line is not a line of boundary, but one designed to point out the sinuosity of the bank or shore, and a means of ascertaining the quantity of land in the fraction which is to be paid for by the purchaser. *Railroad Company* v. *Schurmeir*, 7 Wall. 272; *Hardin* v. *Jordan*, *supra; Horne* v. *Smith*, *supra*. The Fort Kearney reservation was a single body of land, whose survey was directed by a special act of Congress, and there is nothing to show that in making the survey there was any intentional wrong on the part of the surveyors. Evidently the survey of the entire tract was completed before the lands, or any part of them, were offered for sale. According to statements in the brief of counsel for plaintiff in error as well as in the opinion of the Secretary of the Interior in *In re Christensen*, 25 L. D. 413,

there were several islands in the Platte River within the reservation not surveyed. The Secretary says that it does not appear why the lines of survey were not·extended over these islands, but in the brief of counsel as well as in the opinion of the Supreme Court it is stated that the instructions issued by the Land Department to the surveyors were to survey all islands of twenty-one acres and upwards. The reason of the Department or of the surveyors (whichever may have been responsible for the omission to survey these small islands) for these omissions is not disclosed. Possibly they may have been regarded as having no stability as tracts of land but as mere sandbars, which are frequently found in Western waters, and are of temporary duration, existing to-day and gone to-morrow. Be that as it may, there is nothing to indicate any fraud or mistake on the part of the surveyors. Doubtless this island of about twenty-two acres was regarded· as coming within their instructions, and very likely at the time of the survey did not contain. even twenty-one acres. Further, an application for a survey of this island was refused, and this refusal was repeated once or twice. The Secretary of the Interior based his action on the decision of this court in *Grand Rapids & Indiana Railroad Company* v. *Butler,* 159 U. S. 87, and held that the Department was precluded from a survey and sale of an island after the lands on the adjacent banks of the river had been surveyed and sold. In the *Grand Rapids case* it appeared that the land on the east bank .of Grand River had been surveyed in 1831, and that on the west bank of the river in 1837, and also that included in this last survey were four islands. Upon these surveys the adjacent land and the islands were sold and patented to private parties. In 1855 a parcel ' of ground in the river was, under instructions from the surveyor general, surveyed·and marked "Island No. 5," and for that island a patent was issued to the railroad company. We held that the patent to the riparian owner issued before the date of the last survey conveyed to him the title to the island saying (p. 95):·

"We have no doubt upon the evidence that the circumstances were such at the time of the survey as naturally induced the surveyor to decline to survey this particular spot as an island. There is nothing to indicate mistake or fraud, and the Government has never taken any steps predicated on such a theory; and did not survey the so called Island No. 5 until twenty-five years after the survey of 1831, and nearly twenty years after that of 1837."

These considerations furnish a sufficient answer to the question and sustain the decision of the Supreme Court of Nebraska.

It is further contended that the land of one of these patentee's is itself part of an island, and that therefore he has no riparian rights. It is sufficient reply to this contention that the Government surveyed and patented the lands up to the banks of the channel in which the island in controversy is situated, and a patentee, although his land may be itself surrounded by two channels of the river, has all the rights of a riparian owner in the channel lying opposite his banks.

Nothing herein stated conflicts with *Horne* v. *Smith, supra; Niles* v. *Cedar Point Club,* 175 U. S. 300; *French-Glenn Live Stock Company* v. *Springer,* 185 U. S. 47, or *Kirwan* v. *Murphy,* 189 U. S. 35. In the first of those cases it appeared that the survey stopped at a bayou and did not extend to the main channel of Indian River, a mile distant, and we held that the line of that bayou must be considered as the boundary of the grant; that it could not be extended over the unsurveyed land between the bayou and the main channel of Indian River; that it was a case of an omission from the survey of land that ought to have been surveyed, and that such omission did not operate to transfer unsurveyed land to the patentee of the surveyed land bordering on the bayou. In the second we held that, as the survey showed a meander line bordering on a tract of swamp or marsh lands, the grant by patent terminated at the meander line and did not carry the swamp lands lying between it and the shores of Lake Erie. In the third, it appeared that there was no body of water in front of the meandered line,

and we held that that line must, therefore, be the limit of the grant, and the fact that outside the side lines extended there was a body of water did not operate to extend the grant into any portion of that body of water.  In the last of these cases the complainants, the owners of 859.38 acres as shown by the descriptions in their patents of fractional lots, claimed by reason thereof to be the owners of 1,202 acres lying between the meandered lines and a lake, and sought by injunction to restrain the Land Department from making a survey of these latter lands.  We held that injunction would not lie, and that the officers of the Government could not be restrained from making a survey; that the rights of the complainants could be settled, after a survey and transfer of the legal title from the Government, by an action at law.

It is suggested in one of the briefs that this island extends up or down the river beyond the side lines of the tracts belonging to these riparian proprietors.  A plat which is in evidence seems to support this statement, but the finding of the trial court, which is not disturbed by the Supreme Court, is to the effect that it lies between the tracts of the riparian proprietors.  Of course, their title is only to the land which is in front of their banks and not beyond the side lines in either direction.

It must also be noticed that the Government is not a party to this litigation, and nothing we have said is to be construed as a determination of the power of the Government to order a survey of this island or of the rights which would result in case it did make such survey.  As we reserve the rights of the United States we do not even impliedly sanction the intimation contained in the opinion of the court below that under the decision in *Hardin* v. *Jordan,* 140 U. S. 371, although, on non-navigable waters, riparian rights were not conferred by the state law, nevertheless the land beyond the banks passed to the State in virtue of the patents of the United States to the lot owners.  Upon that question we express no opinion.

Our conclusion, therefore, is that by the law of Nebraska, as interpreted by its highest court, the riparian proprietors are

the owners of the bed of a stream to the center of the channel; that the Government, as original proprietor, has the right to survey and sell any lands, including islands in a river or other body of water; that if it omits to survey an island in a stream and refuses, when its attention is called to the matter, to make any survey thereof, no citizen can overrule the action of the Department, assume that the island ought to have been surveyed, and proceed to occupy it for the purposes of homestead or preëmption entry. In such a case the rights of riparian proprietors are to be preferred to the claims of the settler.

We see no error in the judgment of the Supreme Court of Nebraska, and it is

*Affirmed.*