Barbara W. **WOLFF** and Janice Wheeler **Tinker, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 91–2252.

United States Court of Appeals, Sixth Circuit.

Argued May 12, 1992.

Decided June 15, 1992.

ter, Swift, Collins & Coey, Lansing, Mich., for plaintiffs-appellees.

Jacques B. Gelin (argued and briefed), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., W. Francesca Ferguson, Asst. U.S. Atty., Grand Rapids, Mich., for defendant-appellant.

Before: NELSON and SILER, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an action against the United States to quiet title to a small island in a lake in Northern Michigan. The plaintiffs' claim derives from an 1871 patent in which the United States conveyed parcels of land adjacent to the lake. The question presented is whether the island was included in the riparian rights that the United States gave up when it patented the littoral land; the plaintiffs contend that the island was included, and the government contends that it was not.

The district court answered the question in the affirmative and entered summary judgment in favor of the plaintiffs' predecessor.[1] *Wheeler v. United States*, 770 F.Supp. 1205 (W.D.Mich.1991). We think the district court's conclusion was correct, and we shall affirm the judgment.

I

The island in question, which is located in Arbutus Lake, is slightly less than one acre in size. The government identifies the island as Tract 39 of Section 9, Township 26 North, Range 10 West, Michigan Meridian, Michigan.

Section 9, as first surveyed in 1839, resurveyed in 1852, and platted in 1853, includes the larger part of Arbutus Lake. The island itself was not surveyed by the government until the latter part of the 20th Century; the Surveyor General had issued instructions in 1833 that surveyors working in the Michigan Territory, as it then was,

David W. McKeague, Webb A. Smith (argued), Frank A. Fleischmann (briefed), Fos-

[1]. The action was brought initially by Olive Wheeler as trustee of the estate of Donald S. Wheeler. Mrs. Wheeler died during the pendency of the appeal, and two successor trustees, Barbara W. Wolff and Janice Wheeler Tinker, have been substituted as plaintiffs-appellees.

should survey islands "suitable for cultivation"—and this small island evidently was not deemed suitable for cultivation.

By Act of Congress dated June 3, 1856, 11 Stat. 21, the United States granted the State of Michigan certain unappropriated public land to aid in the construction of the Grand Rapids and Indiana Railroad. As a "primary grant," the Act gave the state all odd-numbered lots owned by the United States within six miles of either side of the railroad line. Congress also authorized the state to select lands to "indemnify" it for lots previously disposed of by the United States. The state was entitled to 438.38 acres as an indemnity selection.

On March 30, 1871, the United States conveyed to the State of Michigan by patent "lots numbered one, two, five, six, seven, eight, nine, ten, North West quarter and West half of the South West quarter of Section 9" for the use and benefit of the Grand Rapids and Indiana Railroad. The patent represents part of the state's indemnity selection.

Lot 2 of Section 9 lies on the western shore of Arbutus Lake. The island with which we are concerned is, at its closest point, not more than 200 feet from the shoreline of Lot 2. If lines were drawn from the edges of Lot 2 to a point in the center of Arbutus Lake, the island would be within the lines.

The Michigan legislature transferred all of the state's rights in Section 9 to the railroad. The railroad, in turn, conveyed Lot 2 to individuals from whose grantees Mrs. F.J. Wheeler purchased the island in 1921. Upon the death of Mrs. Wheeler the island passed by will to Donald S. Wheeler, her son, and it is his estate of which the plaintiffs are trustees.

Members of the Wheeler family have continuously paid taxes on the island since 1921. They have also improved it by the construction of a cabin, dock, decks, and various other amenities.

The Bureau of Land Management surveyed the island in 1985, and a plat of survey was accepted in May of the following year. On May 16, 1986, the government sent the Wheelers a "Notice of Filing Plat," indicating that the government was claiming the island as public land. An administrative challenge to the government's claim proved unsuccessful, and the present quiet title action followed. After the district court entered summary judgment for the plaintiff, the government perfected a timely appeal.

## II

The government contends that its 1871 conveyance of Lot 2 to the State of Michigan could not have included the island because unsurveyed land cannot pass by indemnity selection. *United States v. Northern Pacific Ry. Co.*, 311 U.S. 317, 344, 61 S.Ct. 264, 276, 85 L.Ed. 210 (1940). The government further argues that the island could not have passed to Michigan because the extra land—9/10 of an acre—would have put Michigan over its indemnity limit of 438.38 acres.

These arguments are wide of the mark, in our view. The island was not designated as part of the State of Michigan's indemnity selection, but Lot 2 was. If the island had been surveyed before 1871, it would have been treated as public land title to which could not pass as an incident to the conveyance of the littoral land. The island had not been surveyed, however, and the question is whether the grant of Lot 2 carried the small nearby island with it as an appurtenant riparian right.

The Supreme Court of the United States has held that "grants of the government for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the State in which the lands lie." *Hardin v. Jordan*, 140 U.S. 371, 384, 11 S.Ct. 808, 813, 35 L.Ed. 428 (1890); accord *Oklahoma v. Texas*, 258 U.S. 574, 595, 42 S.Ct. 406, 414, 66 L.Ed. 771 (1922); *Lee Wilson & Co. v. United States*, 245 U.S. 24, 29, 38 S.Ct. 21, 22, 62 L.Ed. 128 (1917); *Whitaker v. McBride*, 197 U.S. 510, 511–12, 25 S.Ct. 530, 531, 49 L.Ed. 857 (1905). Applying this principle in *Grand Rapids & Indiana R.R. Co. v. Butler*, 159 U.S. 87, 15 S.Ct.

991, 40 L.Ed. 85 (1895), the Court held that a patent of littoral land in Michigan by the United States also conveyed a nearby island. In *United States v. Chandler–Dunbar*, 209 U.S. 447, 452, 28 S.Ct. 579, 581, 52 L.Ed. 881 (1908), similarly, the Court, speaking through Mr. Justice Holmes, reiterated that under Michigan law "unsurveyed islands and neglected fragments" pass with littoral lands conveyed by the United States. See also *Whitaker v. McBride*, 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857 (1905) (private party's conveyance of littoral land included a 22–acre unsurveyed island under Nebraska law; query, however, whether the government could have ordered a survey of the island).

In two other cases the Supreme Court found that unsurveyed islands had been retained by the United States when the littoral land was conveyed out. *Moss v. Ramey*, 239 U.S. 538, 546, 36 S.Ct. 183, 184, 60 L.Ed. 425 (1916); *Scott v. Lattig*, 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490 (1913). The government relies on the latter cases for the principle that ownership of unsurveyed islands necessarily remains in the United States until the islands are explicitly relinquished.

We do not read *Moss* and *Scott* as establishing so sweeping a principle. In our view these cases—which do not purport to overrule the earlier caselaw—simply represent applications of the familiar concept that the intent of the United States, express or implied, governs the scope of its land grants. See *Oklahoma v. Texas*, 258 U.S. 574, 594–95, 42 S.Ct. 406, 66 L.Ed. 771 (1922).

*Moss* and *Scott* involved large islands (over 138 acres in one case and 120 acres in the other) that had been left unsurveyed not by design, but because of error by the surveyors. The surveyors were under instruction to ascertain the exact location of the islands and "meander" their exterior boundaries (*i.e.*, prepare plats approximating the sinuosities of the islands' shorelines). The breach of the surveyors' duty obviously did not manifest any intent that purchasers of the littoral land acquire title to all or part of the islands. As the Court put it in *Scott*, the surveyors' error

"was [not] ... calculated to induce purchasers of the fractional subdivisions on the east bank to believe that by paying for the 73.30 and 98.75 acres in those tracts they would get, respectively, 54.75 and 83.40 acres more on the island on the other side of the 300–foot channel." 227 U.S. at 242, 33 S.Ct. at 243.

It is no more likely that the purchasers of the littoral land in *Moss*—land consisting of approximately 110 acres—would have been led by the surveyors' error to think that the government intended to part with an island 10 acres bigger than the parcel being purchased.

In the case at bar, by contrast, there was no surveyors' error. In 1833 surveyors working in the Michigan Territory had been told to meander "Islands suitable for cultivation"—not inconsequential fragments that had no agricultural value and thus, in that time and place, no real value at all. The Wheelers' island contained only .9 acres, and the acreage of the littoral land (Lot 2) appears to have been more than ten times as great. The tail was not disproportionate in size to the dog of which it was an appendage, and the circumstances are not such as to suggest that the United States intended to retain the island when it parted with Lot 2.

Whether the United States intended that particular islands be surveyed is a factor of considerable significance, the caselaw indicates, in determining intent as to title. See *Moss*, 239 U.S. at 546, 36 S.Ct. at 184; *Scott*, 227 U.S. at 241–42, 33 S.Ct. at 243; *Grand Rapids & Indiana R.R. Co. v. Butler*, 159 U.S. 87, 94, 15 S.Ct. 991, 993, 40 L.Ed. 85 (1895), quoting *Mitchell v. Smale*, 140 U.S. 406, 413, 11 S.Ct. 819, 821, 35 L.Ed. 442 (1891). In the situation before us it is also significant, as the caselaw teaches, that the Wheelers' island was very small and of no apparent value at the time the littoral land was patented; see *Moss*, 239 U.S. at 546, 36 S.Ct. at 184 (distinguishing *Whitaker*, 197 U.S. 510, 25 S.Ct. 530); *Scott*, 227 U.S. at 244, 33 S.Ct. at 244 (distinguishing *Chandler–Dunbar Co.*, 209

U.S. at 451, 28 S.Ct. at 580); *Bourgeois v. United States*, 545 F.2d 727, 731, 212 Ct.Cl. 32 (1976).[2] Also worthy of note are the fact that the United States did not treat the island as public land for over a century, see *Moss*, 239 U.S. at 546, 36 S.Ct. at 184 (distinguishing *Whitaker*, 197 U.S. 510, 25 S.Ct. 530), and the fact the United States did not reserve a land approach to the lake. See *Bourgeois*, 545 F.2d at 731 n. 3.

Giving the government the benefit of all inferences that can reasonably be drawn in its favor, *Caldwell v. United States*, 250 U.S. 14, 20, 39 S.Ct. 397, 398, 63 L.Ed. 816 (1919), we see no reason to suppose that the United States intended to retain the island ultimately purchased by the Wheelers. And where no contrary intent can be shown, "[w]hatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the States...." *State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 380, 97 S.Ct. 582, 591, 50 L.Ed.2d 550 (1977), quoting *Packer v. Bird*, 137 U.S. 661, 669, 11 S.Ct. 210, 212, 34 L.Ed. 819 (1891); see also *Grand Rapids & Indiana R.R. Co.*, 159 U.S. 87, 15 S.Ct. 991; *Hardin*, 140 U.S. 371, 11 S.Ct. 808.[3] We must thus look to Michigan property law to determine the legal effect of the 1871 grant insofar as the island is concerned.

In *Grand Rapids & Indiana R.R. Co.*, 159 U.S. at 90–91, 15 S.Ct. at 992, the Court noted the "well-recognized rule in Michigan" that

> "when the government has surveyed its lands along the bank of a river and has sold and conveyed such lands by government subdivisions, *its patent conveys the title to all islands lying between the meander line and the middle thread of the river, unless previous to such patent it has surveyed such islands as governmental subdivisions or expressly re-*

**2.** Like the plaintiffs in their briefs, the district court cited *Bourgeois*, a Court of Claims decision, as a Sixth Circuit case. While instructive, *Bourgeois* is not binding in this circuit.

**3.** In *Bourgeois*, 545 F.2d 727, the Court of Claims held that this rule only controls the status of islands in non-navigable waters. In

*serves them when not surveyed."* (Emphasis supplied.)

This rule applies with lakes as well as rivers, and it applies regardless of whether the body of water surrounding the island is navigable or not. *Chandler–Dunbar Water Power Co.*, 209 U.S. at 452–53, 28 S.Ct. at 581; *Bourgeois*, 545 F.2d at 730; *Booker v. Wever*, 42 Mich.App. 368, 372, 202 N.W.2d 439 (1972).

Under Michigan law, no contrary intent having been shown, the island thus passed to Michigan when the United States patented Lot 2 to the state. From the state, after several mesne conveyances, title passed to the Wheeler family. The judgment quieting title in the Wheelers is therefore AFFIRMED.

the case at bar, the district court did not make a factual finding as to whether Arbutus Lake is navigable, and the parties have not briefed the issue. We believe that state law controls either way; see *State Land Bd.*, 429 U.S. at 377–78, 97 S.Ct. at 590–91, and *Hardin v. Shedd*, 190 U.S. 508, 519, 23 S.Ct. 685, 685, 47 L.Ed. 1156 (1903).