**Edward H. KOCH, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 91–C–470.**

United States District Court, D. Colorado.

June 4, 1993.

Kenneth Balcomb, Glenwood Springs, CO, for plaintiffs.

Gerald Fish, Regional Solicitor, U.S. Dept. of the Interior, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs, Edward Koch, Walter Lemon, Roberta Lemon, Edward Juhan and Anthony Zarlengo, seek review of an Interior Board of Land Appeals decision dated February 21, 1991. That order affirmed dismissal of the plaintiffs' protests against the filing of surveys of six islands in the Colorado River. Defendants, United States, the Department of the Interior, the Interior Board of Land Appeals (IBLA) and the Bureau of Land Management (BLM), have moved for summary judgment. Plaintiffs have responded by opposing that motion and by cross-moving for summary judgment.

The parties have fully briefed the issues and oral argument would not be helpful. Jurisdiction exists under 28 U.S.C. § 1331.

### I. *Factual and Procedural Background.*

The original surveys of the areas in question were performed in 1889 and 1891 by surveyors who did not meander any of the parcels at issue. However, the surveyors identified the parcels in their field notes. The parcels then appeared on the plats prepared from those notes. The United States patented the surveyed land adjacent to the Colorado River, incorporating by reference the relevant plats and field notes.

In 1982, the BLM commenced an investigation to determine ownership of twenty-two land masses in the Colorado River between Glenwood Springs and Grand Junction, Colorado. The BLM determined that nine of the twenty-two land masses were islands which existed and had not been meandered at the

time of the original surveys. On the basis of that investigation, the BLM accepted surveys of those nine islands performed between 1982 and 1987 and announced in the Federal Register that it would officially file the survey plats in its Colorado office.

Prior to the proposed date for filing the survey plats, a number of individuals protested the filing. The protestors argued that they owned the islands under patents from the United States which described the patented lands by reference to the original survey plats for the townships in question. On July 28, 1988, the BLM's Colorado State Director dismissed the protests on the ground that the "United States claims ownership of the islands because they are islands not previously surveyed which were in existence at the time of the original survey of the surrounding lands."

Certain of the protesters appealed the BLM decision to the IBLA, and requested a hearing.[1] The IBLA granted the request for a hearing and referred the case to an Administrative Law Judge (ALJ).

In a sixteen-page pre-hearing stipulation made a part of the hearing record, the parties stipulated that the stretch of the Colorado River containing the parcels at issue is non-navigable. The stipulation included excerpts from the surveying manuals and instructions directing the surveyors to meander islands and to note topographical features. The parties agreed that "[t]he surveys of the involved lands were accepted as having been completed in exact conformance with the [surveying] Instructions," and that "[t]he original surveys were neither fraudulent nor erroneous."

Under the terms of the stipulation, the plaintiffs were to prove that the subject lands were below the ordinary high water mark of the Colorado River at the time of the original surveys and thus were a part of the riverbed, while the BLM was to prove that those lands were islands at the time of the original surveys. The stipulation further defined an "island" as "a permanent land mass rising from the bed of a meanderable body of water above the mean high water mark, separated from the mainland by a perpetual channel." Finally, the parties stipulated that "the original Government Land Office plats and field notes of the areas surveyed, having been incorporated by reference in the original patents, are a part of the description of the lands granted."

Following a hearing held on June 13–16, 1989, the ALJ concluded that the parcels at issue were not islands omitted from the original surveys of the area and, therefore, were not the property of the United States.

The BLM appealed that decision to the IBLA. On February 21, 1991, the IBLA reversed. The IBLA found that the parcels had been omitted from the original surveys conducted in 1889 and 1891 and that "[t]itle to these islands remains in the United States, and they were properly surveyed by BLM." The IBLA concluded that the United States had the authority to survey the islands because they were well-defined bodies of public land that were omitted from the original township survey.

Thereafter, the plaintiffs filed the instant appeal.

## II.  *Analysis.*

A.  Decision Being Reviewed and the Scope and Standard of Review.

■ The parties disagree whether the decision to be reviewed is that of the ALJ or the IBLA. Plaintiffs contend that the IBLA was, in essence, sitting as an appellate court when it reviewed the ALJ's decision and therefore was bound by the ALJ's factual determinations unless they were clearly erroneous.

"Under administrative law principles, an agency or board is free either to adopt or reject an ALJ's findings and conclusions of law." *Starrett v. Special Counsel,* 792 F.2d

1.  The instant action involves six of the nine islands for which surveys were accepted. The claimants of two of the islands failed to appeal from the BLM's dismissal of their protests. In addition, the BLM did not appeal the ruling of the Administrative Law Judge that another of the

parcels was not an island at the time of the original survey. The six tracts here in question are identified as islands 9 (located in sec. 25, T. 6 S., R. 95 W.), 10 (located in sec. 35, T. 6 S., R. 95 W.), 14 (located in sec. 7, T. 7 S., R. 95 W.), 20, 21 and 22 (located in sec. 7, T. 8 S., R. 96 W.).

1246, 1252 (4th Cir.1986). "On appeal from or review of the initial decision, the agency has all the power which it would have in making the initial decision except as it may limit the issues on notice or by rule." *Id.* (quoting 5 U.S.C. § 557(b)). The IBLA retains the power to rule on disputed facts and the ALJ's determinations of such facts are not given the weight of the findings of fact by a district court. *Id.* As the reviewing court, I must review the decision of the board, not that of the ALJ. *Id.*

The scope of this court's review is "confined to the agency record or such portions of it which the parties may cite, and additional evidence is not to be admitted." *Roberts v. Morton,* 549 F.2d 158, 160 (10th Cir.1976). The IBLA's fact findings may only be set aside if this court cannot "conscientiously find that the evidence supporting the decision is substantial, when viewed in the light of the entire record...." *Id.* Questions of law will be reviewed *de novo. United Transp. Union v. Dole,* 797 F.2d 823, 828 (10th Cir.1986).

-B. Whether the Parcels Were "Islands" at the Time of the Original Surveys.

■ The parties agree that if the parcels were not "islands" at the time of the original surveys, then they were a part of the river bed and therefore title to them passed along with the patents.

Plaintiffs contend that the parcels at issue were not islands omitted from the original survey. The heart of the plaintiffs' first argument is that the only way to prove that the parcels were islands at the time of the original surveys would be to show error in those surveys because the surveyors were instructed to survey all islands and to note topographical features. Since the BLM stipulated that those surveys were not erroneous, the plaintiffs contend that any attempt to show error would defy the stipulation.

"Stipulations of fact fairly entered into are controlling and conclusive and courts are bound to enforce them." *Fenix v. Finch,* 436 F.2d 831, 837 (8th Cir.1971). The stipulation that the original surveys were correct and in exact accordance with the instructions must be considered together with the other portions of the stipulation, including: (1) the BLM's position, identified in the stipulation as a legal issue to be determined, that the government's policy at the time of the original surveys was "not to survey islands falling within the regular course of public land surveys;" and (2) the stipulation that the BLM was to prove that the disputed parcels were islands at the time of the original surveys. When these three provisions of the stipulation are read together it is evident that the stipulation does not preclude a finding that the parcels were islands at the time of the original surveys.

■ Thus, it is necessary to determine whether the IBLA's conclusion that the land masses were "islands" (as that term is defined in the stipulations) at the time of the original surveys, is supported by substantial evidence in the record.

Plaintiffs contend that the evidence of the surveyors' decisions not to survey the parcels, the surveyors' descriptions of the parcels,[2] the fact that other islands were surveyed, and the testimony that the Colorado River is in a constant state of semi-disequilibrium all establish that the parcels were not islands at the time of the original surveys.

Plaintiffs, however, do not challenge the IBLA's findings that: (1) each parcel has at least one tree on it which predates the original surveys; (2) each parcel was fast, dry land rising above the mean high water mark and separated from the mainland by a channel at the time of the original surveys; (3) channels are in evidence today surrounding each parcel, although some channels have been filled in by the adjacent riparian land owners; and (4) the current size, shape, and location of each parcel is substantially similar to those shown on the original plats.

2. Parcels 9, 10 and 14 are described in Surveyor Churchfield's field notes as a "bar or low island," a "long low island, overflowing and unfit for cultivation," and a "low overflowing island ... bar or island," respectively. Surveyor House's field notes characterize parcels 20, 21, and 22 as a "large island" (the original plat depicts this parcel as three islands), an "island," and a "gravel bar," respectively.

Although the plaintiffs' arguments are persuasive, the IBLA's decision that the land masses in question were "islands" at the time of the original survey is undoubtedly supported by substantial evidence in the record.

### E. Ownership of the Islands.

The fact that the parcels in question were "islands" at the time of the original surveys, does not, however, end the inquiry into ownership. The Sixth Circuit recently held that the issue who has title to an unsurveyed island hinges on whether there is evidence, either expressed or implied, that the United States intended to retain the island. *Wolff v. United States*, 967 F.2d 222, 226 (6th Cir.), *rehearing denied*, 974 F.2d 702 (1992). The court there concluded that where no contrary intent has been shown, "[w]hatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the States...." *Id.* (citations omitted); *see also Bourgeois v. United States*, 545 F.2d 727, 212 Ct.Cl. 32 (1976) (where the government's intent is not clear from the face of the patent, title to unsurveyed islands in non-navigable waters passes according to the laws of the state in which the islands are located.);[3] *cf. Ritter v. Morton*, 513 F.2d 942 (9th Cir.) *cert. denied*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975) (court must look at all the facts and circumstances in their totality to determine whether islands in a navigable river were intended to be included in the riparian grants); *United States v. Elliott*, 131 F.2d 720 (10th Cir. 1942).[4] Therefore, if the government conveys riparian land along non-navigable waters and there is an absence of evidence whether the government also intended to convey title to islands located within the river, title to the islands passes according to the law of the state in which the property is located.

Defendants' arguments that the Sixth Circuit erred in *Wolff* are not persuasive. Defendants' contention that a long line of cases recognize that title to unsurveyed islands, whether located in navigable or non-navigable water, remains in the United States and may be surveyed and disposed of by the United States, is too broad a statement of the law. Indeed a close reading of the cases reveals that they are all based on the same principle recognized by the court in *Wolff*— that the intent of the United States governs the scope of its land grants. *See Wolff*, 967 F.2d at 225.

The parties have stipulated that the patents to the lands adjoining the disputed islands contained no express reservation of the islands to the United States. Thus, it is necessary to determine whether the facts and circumstances surrounding the original grants evidence an implied intent to retain the islands.

In *Wolff*, the court identified a number of relevant factors to consider in determining whether the government intended to retain title to an island, including: (1) whether the United States intended the island to be surveyed; (2) the size and value of the island at the time the littoral land was patented; and (3) whether the United States treated the island as public land in the past. *Wolff*, 967 F.2d at 225-26.

The parties have stipulated that the original surveys were neither fraudulent nor erroneous, and that they were accepted as having been completed in exact conformance with the surveying instructions. Indeed, the government produced evidence of an unwritten policy that islands unsuitable for cultivation

---

**3.** *Bourgeois* and *Wolff* are in conflict over whether state law governs ownership with regard to islands in navigable waters. Because the parties have stipulated that the instant stretch of the Colorado River where the islands are located is non-navigable, it is not necessary to decide whether the same rule applies to islands in navigable waters.

**4.** In *Elliott* the court reasoned that the United States may intend to restrict a conveyance to lands ending at the riverbank when it disposes of riparian land on a non-navigable river. However, when such intent is not shown, and the lands are not within a state, what the grant conveys is a matter of common law principles and Supreme Court decisions. The court concluded that the grant at issue carried the exclusive right and title to the center of the stream including islands. The original surveys in the instant action were performed in 1889, thirteen years after Colorado statehood.

would not be surveyed.[5] This policy was justified by the fact that the cost of surveying, platting and sale was greater than the island's value. (IBLA decision at 54 n. 15.) Therefore, it is clear that the government did not intend to survey the islands at issue. Moreover, there is no evidence in the record that the United States has treated these islands as public lands.

In addition, as recognized by the court in *Bourgeois*, where, as here, the river involved was non-navigable, it would make little sense to pass title to all shorelands without reserving access easements to the islands. *Bourgeois*, 545 F.2d at 731 n. 3. Had the government intended to retain the islands, it probably would have reserved easements across the riparian land. There is no evidence that the government made any such reservations.

The most important evidence of an intent to convey the islands along with the riparian land is the inclusion of the islands in the surveyors' field notes and the plats which were incorporated by reference in the original patents and are a part of the description of the lands granted.[6] Parcels 9, 10 and 14 are described in Surveyor Churchfield's field notes as, respectively, a "bar or low island," a "long low island, overflowing and unfit for cultivation," and a "low overflowing island ... bar or island." Surveyor House's field notes characterize parcels 20, 21, and 22 as, respectively, a "large island" (the original plat depicts this parcel as three islands), an "island," and a "gravel bar."

"In determining boundaries in any land patent case, special weight must be given to the precise description of the land contained in the surveyor's field notes and the official plat." *Ritter v. Morton*, 513 F.2d 942, 948 (9th Cir.1975). The fact that an island is mentioned in a surveyor's field notes and the official plat is highly persuasive evidence that the island was intended to be conveyed with the riparian land. *See id.; First Nat'l Bank v. United States*, 59 F.2d 367, 370 (8th Cir. 1932). Patentees are entitled to rely on field notes and plats incorporated into their patents. *See Bradford*, 651 F.2d at 706.

Another fact bearing on the government's intent is the size and value of the respective islands at the time of the original surveys. The islands are substantially the same size and shape now as they were at the time of the original surveys. At present island 9 is 23.68 acres, island 10 is 66.63 acres, island 14 is 43.11 acres, island 20 is 19.51 acres, island 21 is 7.29 acres, and island 22 is 7.97 acres. Although these islands are larger than the island in *Wolff*, that fact alone is not dispositive. As discussed above, the instant islands were of little value at the time of the original surveys. Therefore, an intent to retain the islands can not be implied based solely on their size at the time of the original surveys.

Based on the facts that the government did not expressly reserve the islands, that the government did not intend to survey the islands, that the islands were then of little value, that the patents incorporated by reference the relevant plats and field notes which included the islands at issue, that the government apparently reserved no access to the islands across the nearest land, and that the government has not treated the islands as public land in the past, I conclude that there is no clear evidence that the government intended to reserve the islands when it conveyed the riparian land. As a result, ownership of the islands must be determined in accordance with Colorado law.

█ In Colorado, "when a government grant is made which does not reserve a right

---

5. The IBLA determined alternatively that the original surveyors erred when they failed to survey the islands. Here the stipulations provided that the original surveyors did not err in failing to survey the parcels. Plaintiffs were therefore justified in believing that this issue was settled and that no evidence showing absence of error was necessary. *See Bradford v. United States,* 651 F.2d 700, 704–05 (10th Cir.1981).

6. The IBLA did not discuss what effect the description of the islands in the field notes has on the plaintiffs' claims of ownership. Indeed, there is a strong argument that the description of the islands in the field notes and the plats which were subsequently included by reference into the grants prevents the islands from being treated as lands "omitted" from survey.

or interest that would ordinarily pass by the rules of law, and the government does no act indicating an intention to make such reservation, the grant includes all that would pass by it, as if it were a private grant." *Stewart v. Lamm*, 132 Colo. 484, 289 P.2d 916, 917 (1955). Defendants do not dispute that Colorado has adopted the common law with respect to ownership of stream beds. *See More v. Johnson*, 193 Colo. 489, 568 P.2d 437, 439 (1977). *Accord, People v. Emmert*, 198 Colo 137, 597 P.2d 1025 (1979). Indeed, the parties have stipulated that "a grantee of land bordering on a non-navigable meandered river takes title to all submerged lands between the mainland and the thread of the river, unless expressly reserved by the United States." *See Bradford*, 651 F.2d at 706.

Furthermore, it is reasonable to conclude that Colorado would follow the common law rule governing ownership of islands in non-navigable waters. Under that rule grants of land on a non-navigable river entitle the grantee to all islands lying between the mainland and the thread of the stream. *Grand Rapids & I.R. Co. v. Butler*, 159 U.S. 87, 92, 15 S.Ct. 991, 992–93, 40 L.Ed. 85 (1895). It follows that the plaintiffs hold title to the islands here at issue.

Accordingly, IT IS ORDERED that:

(1) Plaintiffs' motion for summary judgment is granted;

(2) Defendants' motion for summary judgment is denied; and

(3) Judgment shall enter in favor of the plaintiffs and against the defendants.