47 F.3d 1015
 Edward H. KOCH, Walter B. Lemon, Roberta A. Lemon, Edward N.
Juhan, Anthony F. Zarlengo, Plaintiffs-Appellees,
v.
UNITED STATES of America, DEPARTMENT OF INTERIOR, Interior
Board of Land Appeals (the), Bureau of Land
Management, Defendants-Appellants.
 No. 93-1298.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 31, 1995.
Rehearing Denied April 13, 1995.
 
 Kenneth Balcomb, of Delaney & Balcomb, P.C., Glenwood Springs, CO (Robert M. Noone and Margaret O'Donnell, with him on the briefs) for plaintiffs-appellees.
 Jacques B. Gelin, Attorney for Dept. of Justice, Environment & Natural Resources Div., Washington, DC (Gerald S. Fish and David C. Shilton, Attorneys, Dept. of Justice, Environment & Natural Resources Div., Lois J. Schiffer, Acting Asst. Atty. Gen., James R. Allison, U.S. Atty., Paul J. Johns, Asst. U.S. Atty. and Lyle K. Rising, of counsel, Office of Regional Sol., Dept. of Interior, with him on the briefs) for defendants-appellants.
 Before TACHA and BARRETT, Circuit Judges, and CAMPOS, Senior District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 This appeal results from a dispute over the ownership of six land masses on the Colorado River. Plaintiffs claim ownership of the lands through patents granted by the United States; the United States contends that the "islands" remained public lands following the execution of the patents. The case originated in the Interior Board of Land Appeals (IBLA), which ultimately ruled in favor of the government. Plaintiffs then filed suit in federal court. The district court reversed the IBLA's decision, granting summary judgment in plaintiffs' favor. The government now appeals. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 I. BACKGROUND
 
 2
 In 1889 and 1891, Peter Crutchfield and George House surveyed the area surrounding the land masses in question (in shorthand, the "islands"). The surveyors described each island in their field notes and identified them on the plats prepared from their notes. Crutchfield and House never meandered the islands, however, so that the islands remained officially unsurveyed. The United States patented the surveyed land adjacent to the Colorado River, incorporating by reference the relevant plats and field notes. Plaintiffs now claim ownership of these islands through the chain of title from these patents.
 
 
 3
 In 1982 the Bureau of Land Management (BLM) announced that it would survey nine islands along the same stretch of the Colorado River. The BLM determined that, although those nine islands existed at the time of the original survey, they had not yet been meandered. The BLM announced in 1987 that it would file in its Colorado office the survey plats that included the islands, indicating that the BLM believed that the islands belonged to the federal government.
 
 
 4
 Several individuals protested the proposed filings, asserting ownership of the islands deriving from the patents to the lands adjacent to the river. The Colorado State Director of the BLM dismissed the protests, asserting that the United States owned the islands because they were previously unsurveyed.
 
 
 5
 Plaintiffs claiming ownership to six of the nine islands appealed to the IBLA.[1] The parties then entered into a number of stipulations before the Administrative Law Judge (ALJ). Under these stipulations, the parties agreed that the surveys were performed properly, that this portion of the Colorado River was non-navigable, and that the reason these six islands were not originally surveyed was that they were of little value. After a hearing, the ALJ ruled in favor of plaintiffs, holding that the islands "passed with the patent to the uplands adjacent to the parcels." On appeal, the IBLA reversed the ALJ's decision. It reasoned that the United States was authorized to survey the lands because the islands were well-defined bodies of public land omitted from the original survey.
 
 
 6
 Plaintiffs appealed to federal court, asserting subject matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. Secs. 701-706. The same stipulations that had been placed before the IBLA were put into evidence in district court. While accepting the IBLA's factual findings, the district court reversed the IBLA's decision. The court concluded that the land masses were islands, that state law should govern the construction of the patents, and that state law vested title in plaintiffs, 824 F.Supp. 996.
 
 
 7
 The government now appeals to this court, alleging that the district court erred in failing to apply the following rules of law: a patent from the United States does not pass title to an island existing when the survey was made; unsurveyed land cannot be conveyed; government grants must be clear and unambiguous; and the government cannot be bound by estoppel.
 
 II. STANDARD OF REVIEW
 
 8
 This case results from an administrative proceeding. As a reviewing court, our task is to determine the legal principles underlying the rights of riparian land owners against the United States. Because the legal determination does not depend on the agency's interpretation of a statutory provision, cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984), we review these questions of law de novo, see Kapcia v. INS, 944 F.2d 702, 705 (10th Cir.1991); United Transp. Union v. Dole, 797 F.2d 823, 828 (10th Cir.1986). We review the IBLA's factual findings deferentially, upholding the findings as long as they are supported by substantial evidence in the record as a whole. See Arkansas v. Oklahoma, 503 U.S. 91, 108, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992); Monfort, Inc. v. NLRB, 965 F.2d 1538, 1540 (10th Cir.1992).
 
 
 9
 As we noted earlier, the parties agreed to a number of stipulations. While this court will honor stipulations regarding factual issues, see, e.g., Vallejos v. C.E. Glass Co., 583 F.2d 507, 510-11 (10th Cir.1978), "[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law," Dimidowich v. Bell & Howell, 803 F.2d 1473, 1477 n. 1 (9th Cir.1986).
 
 III. THE EQUAL FOOTING DOCTRINE
 
 10
 Before addressing whether the patents granted title in the islands to plaintiffs' predecessors in interest, we must determine whether the islands passed to Colorado when it became a state in 1876. If the islands passed to Colorado when it entered the Union, the United States government cannot now survey the lands as its own.
 
 
 11
 The equal footing doctrine is grounded in the idea that new states enter the Union with the same rights as the original states. Pollard's Lessee v. Hagan, 44 U.S. (3 How.) 212, 230, 11 L.Ed. 565 (1845) ("The new states have the same rights, sovereignty, and jurisdiction ... as the original states."); see also Utah Div. of State Lands v. United States, 482 U.S. 193, 195-97, 107 S.Ct. 2318, 2320-21, 96 L.Ed.2d 162 (1987). In Pollard's Lessee, the Supreme Court held that "[t]he shores of navigable waters, and the soils under them, were not granted by the Constitution to the United States, but were reserved to the states respectively." Pollard's Lessee, 44 U.S. (3 How.) at 230. Because a new state enters the Union on "equal footing" with the original states, it acquires title to the lands under the navigable waters within its borders. Id.; see also Texas v. Louisiana, 410 U.S. 702, 713, 93 S.Ct. 1215, 1221, 35 L.Ed.2d 646 (1973). Therefore, if these islands are in a navigable part of the Colorado River and are part of the stream bed,[2] they passed to the state in 1876.
 
 
 12
 The parties have stipulated, however, that these islands lie in a non-navigable portion of the Colorado River. The equal footing doctrine simply does not cause land in non-navigable waters to pass from the federal government to the state. Consequently, the State of Colorado did not acquire the islands in 1876, and the federal government held the islands as public land following Colorado's entry into the Union.
 
 IV. THE PATENTS
 
 13
 We next review whether plaintiffs hold title to the land by virtue of the patents that the United States government gave to plaintiffs' predecessors in interest.[3] Of course, if the federal government intended to retain the islands as public land, then the islands remain the property of the United States. See Oklahoma v. Texas, 258 U.S. 574, 594-95, 42 S.Ct. 406, 414, 66 L.Ed. 771 (1922) ("If by ... the terms of its patent [the government] has shown that it intended to restrict the conveyance ..., that intention will be controlling."). The government's intention controls the disposition of land granted by government patent; thus, the federal government is not bound by its mistakes. Scott, 227 U.S. at 241-42, 33 S.Ct. at 243; Grand Rapids & I.R. Co. v. Butler, 159 U.S. 87, 94, 15 S.Ct. 991, 993, 40 L.Ed. 85 (1895) (" '[M]istakes, of course, do not bind the government.' ") (quoting Mitchell v. Smale, 140 U.S. 406, 413, 11 S.Ct. 819, 822, 35 L.Ed. 442 (1891)).
 
 
 14
 Nothing in the record clearly reveals the government's intent with respect to patents affecting the islands at issue. There is no indication that the government intended to part with the islands; however, the evidence also does not support the contention that the government's failure to survey the islands demonstrated its desire to retain them. First, the patents are silent as to whether the government continued to view the islands as public lands or instead wished to convey the property. Second, the parties have stipulated that the reason that the government did not originally survey the islands was that they were of little value, suggesting that the government had no affirmative intent to retain or dispose of the islands. Finally, the geographic positioning of the islands does not clearly show the government's intent. The government patented all of the area around the island. Because the river surrounding the islands is non-navigable, the government had no access to the islands. As the government points out, however, it had other means to reach the islands, such as condemnation. We therefore find no government intent expressed by the patents either to retain or to dispose of the islands.
 
 
 15
 Given the ambiguity of the grants, the government asks this court to subject the patents to "the general rule of construction that any ambiguity in a grant is to be resolved favorably to a sovereign grantor--'nothing passes but what is conveyed in clear and explicit language.' " Great N. Ry. Co. v. United States, 315 U.S. 262, 272, 62 S.Ct. 529, 532, 86 L.Ed. 836 (1942) (quoting Caldwell v. United States, 250 U.S. 14, 20, 39 S.Ct. 397, 398, 63 L.Ed. 816 (1919)); see also Watt v. Western Nuclear, Inc., 462 U.S. 36, 59, 103 S.Ct. 2218, 2231, 76 L.Ed.2d 400 (1983). But the Supreme Court has not used that interpretive technique when examining the effect of a patent on islands in adjacent waters. Instead, the Court has stated that when the government's intention is ambiguous, "it will be taken to have assented that its conveyance should be construed ... according to the law of the state in which the land lies." Oklahoma, 258 U.S. at 595, 42 S.Ct. at 414.
 
 
 16
 Of course, " '[t]he question as to the extent of this federal grant, that is, as to the limit of the land conveyed, ... is necessarily a federal question.' " Bonelli Cattle Co. v. Arizona, 414 U.S. 313, 320, 94 S.Ct. 517, 523, 38 L.Ed.2d 526 (1973) (quoting Borax Consol., Ltd. v. Los Angeles, 296 U.S. 10, 22, 56 S.Ct. 23, 29, 80 L.Ed. 9 (1935)), overruled in part by Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co., 429 U.S. 363, 378, 97 S.Ct. 582, 590, 50 L.Ed.2d 550 (1977). Nevertheless, in this select area of cases, federal law directs a court to look to state law to resolve the dispute. See Corvallis Sand & Gravel Co., 429 U.S. at 378, 97 S.Ct. at 590 (stating that the "Court has consistently held that state law governs issues relating to" riparian lands which did not pass under the equal footing doctrine); Chandler-Dunbar, 209 U.S. at 452-53, 28 S.Ct. at 581 (applying Michigan law); Whitaker v. McBride, 197 U.S. 510, 511-12, 25 S.Ct. 530, 531, 49 L.Ed. 857 (1905) ("It is the settled rule that the question of the title of a riparian owner is one of local law.");[4] Shedd, 190 U.S. at 519, 23 S.Ct. at 685; Grand Rapids, 159 U.S. at 92-94, 15 S.Ct. at 992-93 (analyzing Hardin v. Jordan, 140 U.S. 371, 11 S.Ct. 808, 35 L.Ed. 428 (1891), and applying Michigan law to land grant); Jordan, 140 U.S. at 384, 11 S.Ct. at 812 ("In our judgment the grants of the government for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the state in which the lands lie.").[5] Moreover, in cases similar to the one at bar, two other circuits have interpreted the same Supreme Court opinions as directing the court toward state law. See Wolff v. United States, 967 F.2d 222, 224 (6th Cir.), reh'g denied, 974 F.2d 702 (1992); Bourgeois v. United States, 545 F.2d 727, 731 (Ct.Cl.1976) ("[W]e hold that if the intent of the grantor is ambiguous and the Government grants shoreland along non-navigable waters, it also passes title to islands according to the law of the state in which the property is located.").[6] We therefore look to Colorado state law to ascribe rights in the property at issue here.
 
 
 17
 "The general rule of law followed in Colorado is that a deed conveying land bordered by a non-navigable stream includes the bed to the center." More v. Johnson, 193 Colo. 489, 568 P.2d 437, 439 (1977); see also United States v. Goodrich Farms Partnership, 947 F.2d 906, 908 (10th Cir.1991); People v. Emmert, 198 Colo. 137, 597 P.2d 1025, 1027 (1979). This rule conforms to the common law rule for non-navigable waters. See Jordan, 140 U.S. at 383-84, 11 S.Ct. at 812. We therefore conclude that Colorado would follow the common law rule for islands in the river, which holds that "all grants bounded upon a river not navigable by the common law entitle the grantee to all islands lying between the main-land and the center thread of the current." Id. at 384, 11 S.Ct. at 812; see also Grand Rapids, 159 U.S. at 92-93, 15 S.Ct. at 992-93. The government does not dispute that the islands fall between the mainland and the center thread of the current and has therefore waived the issue. Thus, applying Colorado law, we hold that plaintiffs own the islands in question.
 
 V. ATTORNEY'S FEES
 
 18
 Plaintiffs also ask for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412(d)(1)(A). That provision allows courts to award fees to a "prevailing party" in an action "brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Id. A party must seek the fee award "within thirty days of final judgment in the action." Id. Sec. 2412(d)(1)(B).
 
 
 19
 In this context, a final judgment "means a judgment that is final and not appealable." Id. Sec. 2412(d)(2)(G). In other words, "[t]he 30-day EAJA clock begins to run after the time to appeal ... has expired." Melkonyan v. Sullivan, 501 U.S. 89, 96, 111 S.Ct. 2157, 2162, 115 L.Ed.2d 78 (1991). We must therefore determine whether we can reach the merits of the attorney's fees question even though either party could appeal this decision (i.e., by applying for certiorari to the Supreme Court).
 
 
 20
 In Melkonyan, the Supreme Court left open the question of whether a party can ask for fees "at any time up to 30 days after entry of judgment, and even before judgment is entered, as long as he has achieved prevailing party status." Id. at 103, 111 S.Ct. at 2165. The Court, however, has subsequently resolved this issue. In Shalala v. Schaefer, --- U.S. ----, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the district court had never entered the judgment by filing a separate document as required by Fed.R.Civ.P. 58, so the time for filing an appeal of the district court's decision technically had not run. The Court held that the plaintiff was nevertheless entitled to file for attorney's fees. Id. at ----, 113 S.Ct. at 2632. Schaefer therefore makes clear that a plaintiff may ask for attorney's fees even when the time for appeal has not elapsed. Thus, we hold that plaintiffs' request before this court is timely, and we will examine the merits of their attorney's fees claim.
 
 
 21
 To repeat, plaintiffs are not entitled to attorney's fees if the government's position is "substantially justified." In this context, "substantially" means " 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); see also Gatson v. Bowen, 854 F.2d 379, 380 (10th Cir.1988). While the rulings of other courts are not dispositive of whether the government's position is substantially justified, "a string of losses can be indicative; and even more so a string of successes." Pierce, 487 U.S. at 569, 108 S.Ct. at 2552.
 
 
 22
 In this matter, the law of this circuit was unclear before this case. In addition, other circuits had disagreed over whether state law applied under these circumstances. Compare Wolff, 967 F.2d at 222, and Bourgeois, 545 F.2d at 727, with Ritter, 513 F.2d at 942, and Severson, 447 F.2d at 631. We therefore hold that the position of the United States was substantially justified in this case, and plaintiffs are not entitled to attorney's fees under the EAJA.
 
 VI. CONCLUSION
 
 23
 Federal law instructs the court to apply state law to ascribe title under the circumstances of this case. Because Colorado law would vest title in plaintiffs, we hold that plaintiffs are the rightful owners of the islands. The government's position in this case was substantially justified, however, so plaintiffs are not entitled to attorney's fees under the EAJA. The decision of the district court is therefore AFFIRMED.
 
 
 
 *
 The Honorable Santiago E. Campos, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 Because persons claiming ownership to three of the islands did not appeal to the IBLA, those islands are not a subject of this action
 
 
 [2]
 The Supreme Court has refined the rule that lands underlying navigable streams belong to the states. Islands that are fast dry land and not part of the bed or stream do not pass to the states. Scott v. Lattig, 227 U.S. 229, 244, 33 S.Ct. 242, 244, 57 L.Ed. 490 (1913); see also Texas, 410 U.S. at 713, 93 S.Ct. at 1221 (reaffirming the holding in Scott ); Moss v. Ramey, 239 U.S. 538, 546, 36 S.Ct. 183, 184, 60 L.Ed. 425 (1916) ("It was fast, dry land, and neither a part of the bed of the river nor land under water, and therefore did not pass to the state of Idaho on her admission into the Union."). The IBLA found that the land masses were islands which were fast dry land. Consequently, the land masses would not have passed to the state in 1876 even if the river had been navigable
 
 
 [3]
 We emphasize that the questions of whether the land passes to the state and whether it passes under the patent are analytically distinct. In their briefs, the parties conflate these issues, often using the law governing the passage of land to the state to analyze rights under the patents. The Supreme Court, though, has clearly used different modes of analysis for the two situations. See, e.g., Oklahoma v. Texas, 258 U.S. 574, 591-92, 42 S.Ct. 406, 413, 66 L.Ed. 771 (1922) (although the river was not navigable and therefore title did not pass to the state upon admission to the Union, the state can claim parts of the bed "incidental to its ownership of riparian lands on the northerly bank"); United States v. Chandler-Dunbar Water Power Co., 209 U.S. 447, 451, 28 S.Ct. 579, 580, 52 L.Ed. 881 (1908) (analyzing "whether the title remains in the state or passed to the defendant with the land conveyed by the patent"); Hardin v. Shedd, 190 U.S. 508, 519-20, 23 S.Ct. 685, 685, 47 L.Ed. 1156 (1903) (explaining that the state never owned the land even though the courts look to state law to construe the patent)
 Of course, this distinction does not mean that the state cannot convey title to lands that it has gained through the equal footing doctrine. See, e.g., United States v. Mission Rock Co., 189 U.S. 391, 406, 23 S.Ct. 606, 609, 47 L.Ed. 865 (1903). For example, states own lands under navigable streams under the equal footing doctrine. Some states automatically grant title in that land to the riparian landowners. See, e.g., Shedd, 190 U.S. at 519, 23 S.Ct. at 685 ("When land under navigable water passes to the riparian proprietor, along with the grant of the shore by the United States, it does not pass by force of the grant alone, because the United States does not own it, but it passes by force of the declaration of the state which does own it that it is attached to the shore.").
 
 
 [4]
 Although the government was not a party in Whitaker, that case illustrates the consistency with which state law is applied in this area
 
 
 [5]
 Compare Moss, 239 U.S. at 538, 36 S.Ct. at 183, where the Supreme Court first found that the islands did not pass to the State of Idaho and determined that "[t]he claim that the island passed under the patents is ... ill-founded" without looking at state law. Id. at 546, 36 S.Ct. at 184
 Moss presents a different situation than our case. In Moss, the islands were left unsurveyed by mistake. Id. "The field notes and plat represented the survey as extending to the river, but made no mention of the island." Id. at 545, 36 S.Ct. at 184. In such a case, the Supreme Court found that the government intended to retain the island. Id.; accord Wolff v. United States, 967 F.2d 222, 225 (6th Cir.) (reading Moss as representing "the familiar concept that the intent of the United States, express or implied, governs the scope of the land grants"), reh'g denied, 974 F.2d 702 (1992). This reading of Moss is further reinforced by placing it in its chronological context. The Court's decision in Oklahoma, 258 U.S. at 574, 42 S.Ct. at 406, coming six years after Moss, once again applied state law to determine the rights of a riparian land owner. Id. at 595, 42 S.Ct. at 414.
 
 
 [6]
 But see Ritter v. Morton, 513 F.2d 942, 946 (9th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975); United States v. Severson, 447 F.2d 631, 634-35 (7th Cir.1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 716, 30 L.Ed.2d 731 (1972)